UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

FLORENCE L. KANE, ROBERT KANE,
and PENELOPE KANE,

                    Plaintiffs,

    -against-

GUARANTY RESIDENTIAL LENDING,
INC.,

                    Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**MEMORANDUM AND ORDER**
04-CV-4847 (ERK)

KORMAN, CH. J.

    Florence, Robert and Penelope Kane (collectively "the Kanes" or "plaintiffs") are homeowners who refinanced the mortgage on their home with Guaranty Residential Lending, Inc. ("GRL"). Plaintiffs originally brought this action in state court, claiming that GRL furnished false and malicious information to unidentified credit reporting agencies. Plaintiffs allege that, although they made all payments due under the mortgage, defendant erroneously notified unspecified credit reporting agencies that plaintiffs were in default on the payments due. As a result, plaintiffs were denied credit for which they applied, and for which they allege they were rightfully entitled. Plaintiffs seek compensatory and punitive damages, as well as legal fees, claiming that GRL was "negligent, careless, wrongful, libelous, slanderous and malicious in falsely and erroneously making reports of alleged late mortgage payments . . . [and] for failing and refusing to correct the wrongful and libelous information which was negligently disseminated, even though Defendant knew or, in the exercise of reasonable care and diligence, should have known that such information was false."

Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion to Dismiss ("Plaintiffs' Memorandum") at 3 (internal quotation marks omitted). GRL removed the case to federal court, and now moves to dismiss. Because plaintiffs have failed to allege facts that state a claim upon which relief can be granted, I grant defendant's motion to dismiss.

## Background

On October 11, 2002, plaintiffs refinanced the mortgage on their home, taking out a mortgage from defendant in the amount of $360,000.00, together with interest, for a period of 30 years. Plaintiffs' first payment (for principal and interest) amounted to approximately $2,300, and was due on December 1, 2002. Plaintiffs allege that they made this first payment, along with all others due, in a timely manner.

In or about January 2003, defendant assigned plaintiffs' mortgage to a company called "Homecomings," to whom plaintiffs began making their monthly payments. Subsequently, in December 2003, "Homecomings" reassigned plaintiffs' mortgage back to defendant. Since then, plaintiffs have timely made all monthly payments to defendant.

In spite of the fact that they made all payments in a timely fashion, defendant notified them in or about January 2004 that they were in arrears and default on the mortgage. Plaintiffs allege that they notified defendant that they were not in default, and provided defendant with photocopies of the cancelled checks with which they had paid defendant. Nevertheless, defendant "continued to harass and annoy the Plaintiffs and continued to maintain that Plaintiffs were in default in their monthly payments." Complaint, ¶ Fifteenth. Plaintiffs allegedly continued contacting defendant on a monthly basis through July 2004 to provide proof of their timely payments, and yet throughout the same period defendant continued to insist they were in default. In July 2004, plaintiffs retained

counsel, who again contacted defendant.

Notwithstanding the fact that plaintiffs had timely made all mortgage payments, defendant reported plaintiff's alleged late payments to unnamed credit reporting agencies at some unspecified date. These unspecified credit reporting agencies began listing defendant's claims of missed payments on plaintiffs' credit reports. When plaintiffs applied for credit in or about July 2004, they were denied credit on the ground that they were late in making their mortgage payments. Plaintiffs allege that in "falsely and erroneously making reports of alleged late mortgage payments by the Plaintiffs to credit reporting agencies [defendant's acts] were negligent, careless, wrongful, libelous, slanderous, and malicious, and were done without due regard to the true facts and the information available to the Defendant at the time it made such false and erroneous reports." Complaint, ¶ Twenty-First. Plaintiffs allege that, as a result of defendant's actions, plaintiffs' credit standings have been permanently and irreparably damaged.

Plaintiffs seek $1,000,000.00 in compensatory damages, $5,000,000.00 in punitive damages, and fees and costs in the amount of $25,000.00. Defendant has moved to dismiss all plaintiffs' claims in their entirety.

## Discussion

Plaintiffs' complaint is not a model of clarity, and the claims within it are not presented artfully. Nevertheless, it is clear that the gravamen of the complaint is that defendants defamed plaintiffs by informing unnamed credit reporting agencies that plaintiffs were late in making required payments under the mortgage agreement. Plaintiffs do not cite any statute under which they might have a claim on which relief could be granted, but instead aver, generally, that defendant's actions were "negligent, careless, wrongful, libelous, slanderous and malicious." Complaint, ¶ Twenty-First.

Because of the context in which the alleged defamation took place, it is clear that plaintiffs' claims implicate the Fair Credit Reporting Act ("the FCRA" or "the Act"), even though plaintiffs make no mention of the Act in their Complaint. Indeed, the proper analysis of plaintiffs' claims requires an examination of whether they have alleged any viable causes of action under the FCRA, and whether any potential state tort claims are viable, or pre-empted by the FCRA.

### *Plaintiffs have alleged no viable claims under FCRA*

Congress enacted the FCRA in 1968 to promote "efficiency in the Nation's banking system and to protect consumer privacy." 15 U.S.C. § 1681(a); see also Stafford v. Cross Country Bank, 262 F. Supp. 2d 776, 781 (W.D. Ky. 2003). "[T]he FCRA is aimed at protecting consumers from inaccurate information in consumer reports and at the establishment of credit reporting procedures that utilize correct, relevant and up-to-date information in a confidential and responsible manner." Jones v. Federated Fin. Reserve Corp., 144 F.3d 961, 965 (6th Cir. 1998); see also Stafford, 262 F. Supp. 2d at 781-82. In order to protect consumers from the harm that can result when inaccurate information is disseminated into their credit reports, the FCRA prescribes specific duties on three types of entities: (1) consumer reporting agencies; (2) users of consumer reports; and (3) furnishers of information to consumer reporting agencies. Stafford, 262 F. Supp. 2d at 782 (citing Carney v. Experian Info. Solutions, Inc., 57 F. Supp. 2d 496, 500 (W.D. Tenn. 1999)).

Furnishers of information are entities that transmit, to credit reporting agencies, information relating to debts owed by consumers. In this case defendant acted as a furnisher of information to credit reporting agencies.

> The FCRA imposes two duties on furnishers of information, codified at 15 U.S.C. §§ 1681s-2(a) and (b). The category of duties in subsection (a) relates to the furnishers' duty to report accurate information and their ongoing duty to correct

4

inaccurate information. . . . The category of duties in subsection (b) governs the furnishers' duty once notice is received from a credit reporting agency that there is a dispute as to the completeness or accuracy of the information provided to that reporting agency.

Redhead v. Winston & Winston, P.C., No. 01-Civ-11475(DLC), 2002 WL 31106934 at *4 (S.D.N.Y. Sept. 20, 2002). The first issue that must be resolved in ruling on defendant's motion to dismiss is whether plaintiffs have alleged any viable causes of action based on defendant's violation of the duties laid out in 15 U.S.C. §§ 1681s-2(a) and (b).

1.  Plaintiffs can bring no private cause of action based on violations of § 1681s-2(a)

Section 1681s-2(a) of Title 15 of the U.S. Code prohibits furnishing, to a credit reporting agency, any information that the person knows is inaccurate or consciously avoids knowing is inaccurate. Subsection (a) forbids providing any information to a credit reporting agency if the furnisher of information is informed by the consumer that the information is inaccurate. Moreover, if a person learns that any reported information is inaccurate, Subsection (a) obligates that person to notify the credit reporting agency of the inaccuracies, and to provide corrections for any incomplete or inaccurate information. 15 U.S.C. §§ 1681s-2(a).

Plaintiffs' complaint contains allegations that defendant engaged in conduct which violated some of the various prohibitions contained in Subsection (a) of 15 U.S.C. § 1681s-2. In an affidavit submitted by Florence Kane, one of the plaintiffs, in opposition to defendant's motion to dismiss, Kane summarizes the essence of plaintiffs' complaint, which "alleges that Defendant, over a period in excess of seven months, alleged that the Plaintiffs were in default . . .; that during that entire time Plaintiffs notified the Defendant that they were not in such default . . . ; [and] that Defendant's insistence of Plaintiffs' defaults continued through July, 2004, although Plaintiffs had contacted the

Defendant on a monthly basis and continued to provide Defendant with proof of timely payments on the mortgage . . . ." Affidavit of Florence L. Kane at 4-5. Plaintiffs allege that defendants continued to furnish erroneous information to credit reporting agencies after being notified by plaintiffs that the information was inaccurate, and that they failed to provide corrected information to credit reporting agencies in a timely fashion. Plainly, plaintiffs have alleged conduct on the part of the defendant which violates the provisions of Subsection (a) of 15 U.S.C. § 1681s-2.

Plaintiffs' problem here is that "[t]here is no private cause of action under Section 1681s-2(a), for the FCRA limits the enforcement of this subsection to government agencies and officials. 15 U.S.C. § 1681s-2(d)." Redhead, 2002 WL 31106934 at *4 (collecting cases); see also Nelson v. Chase Manhattan Mortgage Corp., 282 F.3d 1057, 1059 (9th Cir. 2002). It is by now well established that an individual consumer may not bring a cause of action for the violation of Section 1681s-2(a), since the Act provides that "[s]ubsection (a) . . . shall be enforced exclusively under § 1681s of this title by the Federal agencies and officials and the State officials identified in that section." 15 U.S.C. § 1681s-2(d); see also Riley v. Gen. Motors Acceptance Corp., 226 F. Supp. 2d 1316, 1319 (S.D. Ala. 2002).

In short, while plaintiffs have alleged that defendant violated Subsection (a) of Section 1681s-2 of the FCRA, they may not proceed with a cause of action for based on that violation, because the FCRA expressly limits the enforcement of Subsection (a) to federal and state officials. "Admittedly, this statutory framework may seem troubling because it seems to disregard the significance of the fact that [defendant] continued to report information . . . at a time when it knew . . . [it] was disputed. However, consumers such as the [plaintiffs] are, in fact, entitled to some protection from such conduct." Aklagi v. Nationscredit Fin. Servs. Corp., 196 F. Supp. 2d 1186,

1194 (D. Kan. 2002). While plaintiffs may not enforce the terms of § 1681s-2(a) through a private cause of action, they can report violations to the Federal Trade Commission, which is authorized to enforce the terms of Subsection(a) under the FCRA. See id.; Hasvold v. First U.S.A. Bank, N.A., 194 F. Supp. 2d 1228, 1235 (D. Wy. 2002).

2. <u>Plaintiffs have not alleged a violation of § 1681s-2(b)</u>

Subsection (b) of Section 1681s-2 regulates the duties of a furnisher of information once that furnisher has received notice from a credit reporting agency that there is a dispute concerning the completeness or accuracy of any information the credit reporting agency has received. Under Subsection (b), once a credit reporting agency gives notice to an information furnisher, the furnisher must conduct an investigation into the information in question, and must disseminate the results of that investigation. However, the duty to investigate in Subsection (b) is triggered only after a furnisher of information receives notice <u>from a credit reporting agency</u> of a consumer's dispute. See 15 U.S.C. § 1681s-2(b)(1) (explaining duties that are triggered after an information furnisher is notified of a dispute "pursuant to section 1681i(a)(2)," the section of the FCRA under which a credit reporting agency must notify an information furnisher of a dispute). Notice from an individual consumer, in the absence of notice from a credit reporting agency, is insufficient to trigger the duties contained in Subsection (b).

Unlike with Subsection (a), under which there is no private cause of action, courts have generally allowed consumers to pursue private claims for "willful or negligent noncompliance with Section 1681s-2(b)." Redhead, 2002 WL 1941179 at *13 (collecting cases). But those courts that have "concluded that a private right of action exists under Section 1681s-2(b) have required a plaintiff to show that the furnisher received notice from a consumer reporting agency, as opposed

7

to the plaintiff alone, that the credit information is disputed." Id. (citing Young v. Equifax Credit Info. Servs., Inc., 294 F.3d 631, 639-40 (5th Cir. 2002)).

Thus, unless and until a furnisher of information receives notice from a credit reporting agency, no private right of action exists under section 1681s-2(b). "This means that a furnisher of credit information, such as [GRL], has no responsibility to investigate a credit dispute until after it receives notice from a consumer reporting agency. Under the statutory language, notification from a consumer is not enough." Stafford, 262 F. Supp. 2d at 784.

Here, plaintiffs have alleged that GRL reported inaccurate information to credit reporting agencies after being notified by plaintiffs and their counsel that such information was false. However, plaintiffs have not alleged that GRL received notice of the dispute from any credit reporting agency. As a result, plaintiffs have failed to allege any violation of section 1681s-2(b).

In sum, I find that plaintiffs have failed to allege any viable causes of action based on the violation of Section 1681s-2 of the FCRA. The allegations in their complaint describe conduct that violates the terms of section 1681s-2(a), but the Act limits enforcement of that provision to federal and state officials. Thus, plaintiffs have no private cause of action based on violations of Subsection (a). And while Subsection (b) does allow for a private cause of action, plaintiffs have failed to allege sufficient facts to state a claim for the violation of Subsection (b). Specifically, plaintiffs have failed to allege that defendant ever received notice of their dispute from a credit reporting agency. Without alleging such facts, plaintiffs cannot satisfy the requirements for a viable cause of action based on violations of 15 U.S.C. § 1681s-2(b). As a result, plaintiffs have failed to plead any viable federal cause of action under FCRA.

## *Any potential state law claims are preempted by FCRA*

Because they have not alleged facts which would support any federal claims against GRL, plaintiffs' claims must be dismissed unless they have alleged any viable state law claims. Plaintiffs argue that their first claim is "one sounding basically in negligence which, in effect, alleges that [GRL] libeled the Plaintiffs through the negligent and careless dissemination of credit information." Plaintiffs' Memorandum at 4. Plaintiff argues further that "no interpretation of 15 U.S.C. Section 1681s-2(a) or (b) can be used to deprive Plaintiffs of their common law cause of action against the Defendant." Id. at 5.

Plaintiffs' assertion is correct to the extent that no common law claims would be pre-empted by Subsections 1681s-2(a) or (b), because neither provision itself concerns the preemption of any state law claims. What plaintiffs fail to acknowledge, however, is that other sections of the FCRA, specifically 15 U.S.C. § 1681t(b)(1)(F) and § 1681h(e), may well preempt their claims. That plaintiffs have failed to meaningfully address the implications of §§ 1681t(b)(1)(F) and § 1681h(e) is no surprise, though, since their Memorandum opposing GRL's motion to dismiss does not cite a single precedent relating to the FCRA even generally, and cites no cases pertaining specifically to preemption under the statute.

Determining whether plaintiffs can proceed with any common law claims requires examining the two "overlapping and potentially contradictory preemption provisions, § 1681t(b)(1)(F) and § 1681h(e), which limit the circumstances under which [plaintiffs] may bring [their] state common law claims." Stafford, 262 F. Supp. 2d at 784. The Courts of Appeals have not yet weighed in on how these two provisions should be reconciled, and the District Courts have come up with at least three different approaches to applying Sections 1681t(b)(1)(F) and 1681h(e). It may be true that none of

9

these approaches is perfect, but under the best reasoned of the three, plaintiffs' common law claims are preempted. Indeed, it appears that plaintiffs' common law claims are preempted under <u>any</u> of the three approaches to reconciling §§ 1681t(b)(1)(F) and 1681h(e).

Section 1681h(e) provides:

> (e) Limitation of liability. Except as provided in sections 1681n and 1681o, no consumer may bring any action for proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency . . . except as to false information furnished with malice or willful intent to injure such customer.

15 U.S.C. § 1681h(e). Section 1681h(e) does not preempt every possible action, as it allows plaintiffs to maintain tort actions, including defamation and negligence claims, but requires plaintiffs to prove malice or willful intent for such claims. In contrast, Section 1681t(b)(1)(F) of the Act appears to preempt all common law claims. It provides:

> No requirement or prohibition may be imposed under the laws of any State . . . with respect to any subject matter regulated under . . . section 1681s-2, relating to the responsibilities of persons who furnish information to consumer reporting agencies, except that this paragraph shall not apply [to specific sections of the Massachusetts Annotated Laws and the California Civil Code].

15 U.S.C. § 1681t(b)(1)(F).

Courts have struggled to reconcile § 1681h(e) and § 1681t(b)(1)(F) because, while the latter appears to grant absolute immunity to furnishers of information, the former appears to bestow only qualified immunity, while permitting claims that include allegations of willful intent or malice. "The tension between these two provisions . . . results from the fact that § 1681h(e) permits state tort claims, but requires a higher standard of proof for those in the nature of defamation, slander, or invasions of privacy, while § 1681t(b)(1)(F) prohibits all state claims covered by § 1681s-2."

10

Stafford, 262 F. Supp. 2d at 785. Notably, the broad language of § 1681t(b)(1)(F) was added to the FCRA in a series of amendments made in 1996, none of which made reference to § 1681h(e) or how the two preemption provisions were interrelated. See id. The interplay and precise relationship between the two provisions is not entirely clear, leading courts to come up with at least three different approaches to reconciling §§ 1681t(b)(1)(F) 1681h(e).

Under the first approach courts have used to resolve the tension between Sections 1681h(e) and 1681t(b)(1)(F), the "total preemption" approach, all state causes of action against furnishers of information are deemed preempted by the sweeping language of § 1681t(b)(1)(F). See Stafford, 262 F. Supp. 2d at 785; see also Hasvold, 194 F. Supp. 2d at 1239 ("[F]ederal law under the FCRA preempts plaintiff's claims against the defendant relating to it as a furnisher of information."). Courts concluding that the FCRA preempts all state claims have reasoned that when Congress amended FCRA in 1996 by adopting the sweeping language of § 1681t(b)(1)(F), it intended to eliminate all state claims against furnishers of information. As the Court explained in Jaramillo v. Experian Info. Solutions, Inc., 155 F. Supp. 2d 356 (E.D. Pa. 2001):

> While Congress did not specifically provide in the [1996] amendments that section 1681t supercedes 1681h, it is clear from the face of section 1681t(b)(1)(F) that Congress wanted to eliminate all state causes of action 'relating to the responsibilities of persons who furnish information to consumer reporting agencies.' Any other interpretation would fly in the face of the plain meaning of the statute.
> . . . .
> The plain language of section 1681(b)(1)(F) clearly eliminated all state causes of action against furnishers of information.

Id. at 361-62. Adopting the total preemption approach outlined in Hasvold and Jaramillo "means that no state tort claims are ever permissible against any furnisher of credit information." Stafford, 262 F. Supp. 2d at 785 (emphasis added).

11

The total preemption approach clearly gives effect to the plain meaning of § 1681t(b)(1)(F). Because that provision was added to the FCRA in 1996, it is a more recent addition to the Act than § 1681h(e), and may indeed represent Congress' conclusion that all common law claims against information furnishers should be preempted by the FCRA. Nevertheless, it is also clear that, as part of the 1996 amendments, Congress did not expressly repeal § 1681h(e). As a result, the problem with giving literal effect to §1681t(b)(1)(F) is that doing so essentially renders § 1681h(e) a meaningless nullity. Thus, adopting the total preemption approach would make it impossible to comply with "the canon of construction that cautions against 'adopt[ing] a construction making another statutory provision superfluous.'" Krause v. Titleserv, Inc., 402 F.3d 119, 127-28 (2d Cir. 2005) (quoting Hohn v. United States, 524 U.S. 236 (1998)).

In order to avoid reading § 1681t(b)(1)(F) so broadly that it renders § 1681h(e) superfluous, other courts have adopted a second, more limited approach to preemption of state claims under the FCRA. Under this second approach, known as the "temporal approach," "the only state law claims preempted are those relating to the obligations of furnishers of information once they know, or have reason to know, about possible inaccuracies." Id. These courts have emphasized that § 1681t(b)(1)(F) must be read in conjunction with § 1681h(e), and that the latter must retain some meaning, reasoning that if § 1681(b)(1)(F) is read broadly to preempt all claims, § 1681h(e) becomes mere surplusage. See Malm v. Household Bank (SB), N.A., No. Civ. 03-4340ADMAJB, 2004 WL 1559370 at *6 (D. Minn. July 7, 2004) ("[T]he temporal approach is the most convincing . . . because it follows the 'whole statute' analysis and does not render either section superfluous.").

Under the temporal approach, state law claims based on actions of a furnisher of information after the furnisher has received notice of inaccuracies are held preempted by § 1681t(b)(1)(F), while

12

actions taken before notice has been received may not be preempted. See, e.g., Aklagi, 196 F. Supp. 2d at 1194-95. It is important to note that the notice referred to here need not be from a credit reporting agency, as is required to sustain a private cause of action under § 1681s-2(b) of FCRA; notice may be received from the a credit reporting agency or from the consumer himself.

The reasoning behind the temporal approach is as follows. Section 1681t(b)(1)(F) provides that no state law claims may be asserted "with respect to any subject matter regulated under . . . section 1681s-2." 15 U.S.C. § 1681t(b)(1)(F). To the extent that a furnisher of information provides inaccurate information after receiving notice of inaccuracy <u>from a credit reporting agency</u>, that conduct is regulated under 15 U.S.C. § 1681s-2(b). To the extent that a furnisher provides inaccurate information after receiving notice <u>from the consumer himself</u>, the "conduct falls squarely within § 1681s-2(a)(1)(B)." Aklagi, 196 F. Supp. 2d at 1194-95. Either way, once a furnisher of information has notice <u>from any source</u> and provides inaccurate information, the conduct is "subject matter regulated under . . . section 1681s-2" of the FCRA. 15 U.S.C. § 1681t(b)(1)(F). Accordingly, any state law claim predicated on a furnisher providing inaccurate information after receiving notice of a dispute "is completely preempted by § 1681t(b)(1)(F)." Aklagi, 196 F. Supp. 2d at 1195; see also Vazquez-Garcia v. Trans Union De Puerto Rico, 222 F. Supp. 2d 150, 162 (D.P.R. 2002).

Under the temporal approach, causes of action predicated on acts that occurred <u>before</u> a furnisher of information had notice of any inaccuracies are not preempted by § 1681t(b)(1)(F), but are instead governed by § 1681h(e). As a result, according to the temporal approach, plaintiffs may bring claims for actions that take place before a furnisher has notice of inaccuracies, but – pursuant to the plain language of § 1681h(e) – these claims can only go forward if a plaintiff alleges that the furnisher of information provided inaccurate information with malice or willful intent to injure the

13

consumer.

Finally, some courts have taken yet a third approach to reconciling Sections 1681h(e) and 1681t(b)(1)(F). Under this "statutory preemption" approach, courts have concluded that § 1681t(b)(1)(F) only applies to, and preempts, claims based on state statutes, while § 1681h(e) – and its malice requirement – applies to state common law torts. See Jeffrey v. Trans Union, LLC, 273 F. Supp. 2d 725, 726-28; McCloud v. Homeside Lending, 309 F. Supp. 2d 1335, 1341-42 (N.D. Ala. 2004). This third approach is "somewhat strained, however, because § 1681t(b)(1)(F) does not specify that it relates to statutes only. Further, as [this approach] greatly minimize[s] § 1681t(b)(1)(F)'s applicability, [it] run[s] afoul of the 'whole statute' approach" and is therefore unpersuasive. Malm, 2004 WL 1559370 at *6.

On balance, the middle course taken in the temporal approach appears to be the best reasoned approach to reconciling the apparently contradictory preemption provisions of the FCRA. The temporal approach strikes a balance which gives effect to both Sections 1681h(e) and 1681t(b)(1)(F). In contrast, the total preemption approach would essentially render § 1681h(e) a superfluous nullity. Moreover, the statutory preemption approach reads an element into § 1681t(b)(1)(F) that its text does not contain – i.e., applicability to statutory claims only – and does not give effect to the two contradictory preemption provisions in a manner as faithful to the statutory language as the temporal approach. In determining whether any of plaintiffs' potential state law claims survive defendant's motion to dismiss, therefore, I believe it is appropriate to utilize the temporal approach, application of which compels the conclusion that all of plaintiffs' state law claims are preempted.

As explained above, under the temporal approach, § 1681t(b)(1)(F) completely preempts any action taken by a furnisher of information after the furnisher has notice of inaccuracies. Here,

plaintiffs have stated that, after GRL initially furnished inaccurate information, plaintiffs "immediately notified Defendant that they were not in default," Plaintiffs' Memorandum at 2, and repeatedly notified GRL of the alleged inaccuracies directly and through counsel. It would appear, then, that the vast majority of the defendant's actions about which plaintiffs complain occurred after GRL had received notice of the inaccuracies. Any state law claims which plaintiffs might bring based on these actions are preempted by § 1681t(b)(1)(F). Notably, in her affidavit, Florence Kane argues that "Plaintiffs were NEVER late with ANY mortgage payment; accordingly, <u>any action taken by the Defendant in connection with Plaintiffs' credit standing was done with 'notice' of the fact that the information was erroneous</u>." Affidavit of Florence L. Kane at 4 (emphasis added). Under these circumstances, <u>all</u> potential state law claims would be preempted, since the plaintiffs themselves contend that all defendant's actions were taken with notice of the inaccuracies. However, it may not be appropriate to hold plaintiffs to a literal interpretation of Kane's statements: in spite of Kane's allegation that GRL had notice of the inaccuracies from the very beginning, it is safe to assume that, at minimum, the first information GRL furnished regarding the alleged default by plaintiffs was made prior to the point at which GRL received notice of the inaccuracy.

According to the temporal approach, § 1681t(b)(1)(F) only preempts claims based on actions after GRL had notice of inaccuracy, and plaintiffs may still assert claims based on GRL's furnishing inaccurate information before it had notice. In order to successfully assert claims based on these actions, plaintiffs must comply with § 1681h(e). Section 1681h(e), however, requires that plaintiffs allege that GRL's initial furnishing of inaccurate information was done with malice or willful intent to harm plaintiffs. See 15 U.S.C. § 1681h(e). Plaintiffs have not done so. Rather, plaintiffs have alleged that GRL was negligent.

15

It is true that, in their complaint, plaintiffs allege that GRL's conduct was "negligent, careless, wrongful, libelous, slanderous and <u>malicious</u> in falsely and erroneously making reports of alleged late mortgage payments." Complaint ¶ Twenty-First (emphasis added). Aside from invoking the term "malicious," however, plaintiffs have alleged nothing to support the contention that, before receiving notice that the information was disputed, GRL acted with malice or willful intent to injure the plaintiffs. Indeed, the gravamen of plaintiffs' complaint is that "Defendant <u>negligently</u> disseminated false and damaging credit information." Plaintiffs' Memorandum at 5 (emphasis added). Plaintiffs have made clear that their claim for compensatory damages is one "sounding <u>basically in negligence</u>, which, in effect, alleges that Defendant libeled the Plaintiffs through the <u>negligent and careless</u> dissemination of credit information." Id. at 4 (emphasis added). Plaintiffs argue that punitive damages are appropriate not because GRL originally acted with malice, but because it took GRL "close to one year to remediate the problems caused by its <u>negligence</u>." Id. at 5 (emphasis added). Finally, in support of their request for counsel fees, plaintiffs reiterate that their injuries were "exacerbated by Defendant's <u>negligence</u> and failure to appropriately respond." Id. (emphasis added). Simply put, that plaintiffs include the word "malicious" in their complaint does not assume talismanic significance when all plaintiffs' subsequent arguments make clear they aver here that defendant's actions were negligent.

While plaintiffs go on to state that "[i]t is respectfully submitted that intent is not an issue," id., plaintiffs cite no authority for this assertion, one that plainly runs afoul of § 1681h(e), which clearly makes intent a dispositive issue. Because plaintiffs argue that GRL acted only carelessly or negligently, any of their claims that are not preempted by § 1681t(b)(1)(F) are preempted by § 1681h(e).

16

In short, following the temporal approach to preemption under the FCRA, I find that all plaintiffs' potential state law claims are preempted by the Act. Notably, however, while application of the temporal approach yields the conclusion that the plaintiffs' state law claims are preempted by the FCRA, following either of the other approaches to preemption under the Act yields the same conclusion in this case. Of course, under the total preemption approach, all potential state law claims the plaintiffs might assert are preempted. And the use of the statutory preemption approach, under which all non-statutory causes of action are governed by § 1681h(e), does not yield a different result, since plaintiffs have failed to allege the malice or willful intent required to sustain a cause of action under § 1681h(e). Thus, while I find the temporal approach to be the best reasoned of the approaches to reconciling §§ 1681t(b)(1)(F) and 1681h(e), and accordingly follow it, the finding that all plaintiffs' state law claims are preempted is reached whether I apply the temporal or any other approach.

In support of its motion to dismiss, defendant argues, alternatively that, even if plaintiffs' state law claims were not preempted under the FCRA, they should be dismissed nonetheless, because plaintiffs have failed to plead a valid claim for libel or slander. It is likely true that plaintiffs have failed to plead any state law defamation claims with the particularity necessary under New York law, since they have failed to specify the words claimed to be defamatory, and have failed to specify when or to whom these words were conveyed. I need not and do not reach this issue, however, in light of the foregoing conclusion on preemption.

## Conclusion

Defendant's motion to dismiss is granted in its entirety. While plaintiffs' complaint leaves much to be desired, I cannot say that it is so clearly deficient that amendment would necessarily be

futile. Plaintiffs are granted leave to file an amended complaint within thirty days of the date of this order.

Dated: Brooklyn, New York
       May 9, 2005

                                    s/Edward R. Korman
                                    Edward R. Korman
                                    Chief United States District Judge